IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

ALICIA GONZALES, )
)
    Plaintiff, )
)
v. ) Civil Action No.: 3:18-cv-00235
) Judge:
)
)
MARSHALL UNIVERSITY )
BOARD OF GOVERNORS, )
)
    Defendant. )

## **COMPLAINT**

Cones now the Plaintiff, Alicia Gonzales, by and through the undersigned counsel, and files her Complaint, and avers as follows:

### I.    **JURISDICTION**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, as the dispute arises under the Constitution, laws, or treaties of the United States, namely, Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), and 28 U.S.C. §1343 as it involves the deprivation of Plaintiff's equal and civil rights under color of state law, statute, ordinance, regulation, and/or custom or usage.

2. This Court has jurisdiction over the Defendant in this matter as at all relevant times in the Complaint, it was a resident of the Southern District of West Virginia and thus subject to its jurisdiction.

3. Venue is proper pursuant to 28 U.S.C. §1391(b) as the action is based on a federal question, the Defendant, for the purpose of venue, at all relevant times resided in the Southern District of West Virginia, and the events giving rise to this civil action occurred in this venue.

## II. PARTIES

4. Plaintiff, Alicia Gonzales, is an adult individual who resides in Pennsylvania.

5. At the time of the subject sexual assault that gives rise to this Complaint, the Plaintiff was a freshman student enrolled at Marshall University.

6. Defendant, Marshall University, is a public educational institution of higher education created and continued by the State of West Virginia, with a primary campus in Huntington, West Virginia.

7. The business and education affairs of Marshall University are under the control, supervision and management of its governing body, the Board of Governors.

8. Defendant, Marshall University, has an Office of Equity Programs, with a Title IX director, that is tasked with addressing, among other things, sexual violence on campus.

## III. TITLE IX

9. The United States Department of Education Office of Civil Rights (OCR) enforces, among other statutes, Title IX of the Education Amendments of 1972, found at 20 U.S.C. §1681, *et. seq.*, and its implementing regulations, 34 C.F.R. part 106.

10. The DOE was authorized by Congress, pursuant to 20 U.S.C. §1682, to promulgate regulations to govern the implementation, interpretation and enforcement of Title IX.

11. The OCR has promulgated numerous documents outlining the requirements for an educational institution to be in compliance with Title IX, including a letter dated April 4, 2011 which specifically addresses student on student sexual harassment, assault, and violence, known as the ("Dear Colleague Letter").

12. Title IX applies to Marshall University because Marshall University receives federal financial assistance.

13. The purpose of the Dear Colleague Letter is to provide educational institutions with clarity as to the requirements that they must follow in order to be in compliance with the DOE.

14. The Dear Colleague Letter specifically outlines the requirements that educational institutions must follow regarding student-on-student sexual harassment, assault and violence.

15. A failure to adhere to the requirements outlined in the Dear Colleague Letter could result in the loss of federal funding for an educational institution such as Marshall University.

16. An inappropriate response by an educational institution to student on student sexual violence may subject the student to a hostile work environment

## IV. FACTUAL ALLEGATIONS

17. On or about February 1, 2016, Plaintiff was violently and forcibly raped in her dorm room by a fellow Marshall University student, Joseph Chase Hardin.

18. Plaintiff immediately contacted her two best friends after the perpetrator left her dorm room.

19. Plaintiff and her two best friends collected evidence of the rape and then went to a local healthcare facility and a rape kit was administered.

20. The following day, Plaintiff and her two best friends went to the Marshall University Police Department and reported the rape of her by Joseph Hardin.

21. That same day, the rape was reported by the Marshall University Police Department (hereinafter "MUPD") to Lisa Martin, Marshall University's Director of Student Conduct.

22. On February 3, 2016, the MUPD transported Plaintiff and her two friends to the Cabell County Courthouse so that Plaintiff could obtain a temporary restraining order (hereinafter "OOP" – order of protection) against Joseph Hardin.

23. The OOP was issued, and on February 4th or 5th it was served on Joseph Hardin.

24. On February 8, 2016, Plaintiff was transported by the MUPD to Lisa Martin's office and proceeded to give a statement regarding the rape for the purposes of initiating the university disciplinary process, with a complaint being filed and opened with the Office of Student Conduct.

25. Joseph Hardin was interviewed by Lisa Martin on February 18, 2016.

26. In the meantime, Joseph Hardin was permitted to remain on campus and no restrictions were put in place to protect Plaintiff from encountering Joseph Hardin on campus or at university activities.

27. Joseph Hardin wore an article of Plaintiff's clothing that he had taken from the Plaintiff during a university basketball game in an act of defiance towards Plaintiff. Plaintiff reported this to Lisa Martin and informed her that she felt threatened by his presence on campus.

28. On March 10, 2016, Lisa Martin notified Plaintiff and Joseph Hardin that she had reached a decision on the disciplinary charges and that she had determined that Joseph Hardin had raped the Plaintiff.

29. Lisa Martin ordered Joseph Hardin to be expelled from Marshall University.

30. On March 11, 2016, Joseph Hardin appealed Lisa Martin's decision. Joseph Hardin remained on campus during the appeal process.

31. The next step of the appeal process was a hearing in front of a student conduct panel. On multiple occasions, Joseph Hardin unilaterally canceled the scheduled hearing, further delaying the disciplinary process.

32. Ultimately, the student conduct panel conducted a hearing on May 4, 2016.

33. The Plaintiff was not permitted in the room during the hearing, despite the fact that the procedure for the hearings mandates that the Complainant (Plaintiff herein) may be present for all parts of the hearing.

34. Joseph Hardin was permitted to remain in the room during the entire hearing.

35. The Plaintiff was not provided an attorney, advisor or representative.

36. Joseph Hardin had two private attorneys attend and participate in the hearing.

37. The hearing was partially recorded by audio, but the majority of the hearing was either unrecorded and/or unintelligible, despite the fact that the Procedures require the entire proceeding to be electronically recorded.

38. The hearing panel was comprised of a faculty member and three students, who lacked the proper training to properly administer and adjudicate a rape hearing, despite the fact that the Procedures require appropriate training.

39. Among many problems with the hearing process was that the Plaintiff was aggressively cross-examined by Joseph Hardin's private attorneys, while she did not have counsel present, and moreover, the cross-examination involved improper areas of inquiry.

40. Further, no physical evidence was permitted to be presented at the hearing to inculpate Joseph Hardin due to the impending criminal trial of Joseph Hardin.

41. Joseph Hardin's counsel also provided the student conduct panel with a copy of the Order of Protection, with a page missing. Joseph Hardin's counsel then intentionally misled the student conduct panel by stating that the criminal judge had found that there was not sufficient evidence to grant a protection order. To the contrary, and as evidenced by a full and complete copy of the Order of Protection, the criminal judge found sufficient evidence of criminal conduct and ordered there to be no contact between Plaintiff and Joseph Hardin.

42. Joseph Hardin's counsel argued extensively that there was no physical evidence and argued that Plaintiff's witnesses had testified differently at a prior criminal hearing. These arguments should have been disregarded entirely, as the physical evidence was withheld due to the ongoing criminal case, and Joseph Hardin's testimony regarding the witnesses' prior testimony was in-credible hearsay and completely inappropriate.

43. Ultimately, the student conduct panel found that there was insufficient evidence to uphold Joseph Hardin's expulsion, and determined that no sanctions should be levied against him.

44. The Plaintiff was not permitted in the room for the student conduct panel's decision or explanation.

45. Plaintiff appealed to the Title IX Coordinator.

46. However, before the Title IX Coordinator reviewed the matter, Marshall University's Interim Dean, Carla Lappelle, reviewed the hearing process and materials, and advised Marshall University President Jerome Gilbert that she recommended Joseph Hardin be banned from campus until the criminal case was completed.

47. President Gilbert accepted Dean Lapelle's recommendation, and Joseph Hardin was suspended from campus pending the outcome of the criminal case, but he was permitted to take online classes.

48. On May 12, 2016, the following day, Joseph Hardin appealed President Gilbert's determination.

49. The appeal was improper and should have been denied immediately. The Plaintiff filed a motion arguing that the appeal was improper and should be quashed, but it was denied.

50. The appeal was assigned to Marshall University's Title IX Coordinator, Debra Hart.

51. On August 18, 2016, Joseph Hardin's appeal was ultimately denied. Ms. Hart held: "[A]fter a careful and detailed review of all written reports, voluntary written statements, available evidence and the records used to render the original decision, I have determined, by a preponderance of the evidence that Mr. Hardin participated in sexual

misconduct in violation of Marshall University's policy on the Marshall University campus. Therefore, the decision to ban Mr. Hardin from Marshall University property must be upheld, and the decision of the President must be **AFFIRMED.** At this point, this is considered a final determination and no changes will be made to it, in accordance with university policy, there is not an opportunity to appeal this determination, as it has been fully vetted by the Title IX coordinator, who has final say in all Title IX-related matters."

52. The Title IX Coordinator thus made the determination that the Plaintiff had been the subject of a criminal sexual assault by Joseph Hardin.

53. However, despite language explicitly finding that a rape had occurred and that a final determination had been made that a violation of the Student Code of Conduct had occurred, apparently Joseph Hardin's ultimate standing with the University rested on the outcome of his criminal case.

54. On January 11, 2017, Joseph Hardin pled guilty to the criminal offense of battery related to the incident that took place on February 1, 2016.

55. Notably, battery is an expellable offense according to Marshall University's Student Handbook.

56. Yet, despite Ms. Hart's final ruling and Joseph Hardin's subsequent plea to the crime of battery, he was reinstated to Marshall University and permitted on campus right after pleading guilty in criminal court.

57. Joseph Hardin, after his guilty plea, filed a Motion for Reconsideration, asking that he be reinstated to the University;

58. The Procedures do not permit a motion to reconsider, and the decision of the Title IX Coordinator of August of 2016 was deemed to be final.

59. The Plaintiff filed a response to the Title IX Coordinator in opposition to Joseph Hardin's reinstatement to Marshall University, noting that he had pled guilty to a battery against another student, which is a violation of Student Code of Conduct, and that the plea did nothing to alter the findings of the Title IX Coordinator of sexual misconduct by Joseph Hardin.

60. On or about March 30, 2017, Marshall University granted Joseph Hardin's Request for Reconsideration.

61. In granting Joseph Hardin's request to be reinstated, Marshall University acknowledged that a distressing incident occurred on February 1, 2016.

62. Marshall University based its reinstatement on the following factors:

(1) Joseph Hardin was not found guilty or responsible for sexual misconduct;

(2) Joseph Hardin needs to be on campus to complete his degree; and

(3) Plaintiff is no longer on campus, so Joseph Hardin's reinstatement shouldn't bother her.

63. The Plaintiff was forced to leave campus due the deliberate indifference of the Defendant.

64. Ultimately, due to Marshall University's handling of this rape and disciplinary process, including the refusal to effectively protect Plaintiff from Joseph Hardin, she was forced to withdraw from the university and enroll in another school.

**COUNT I**
**VIOLATION OF TITLE IX – 20 U.S.C. §1681, *et seq.*,**

65. Plaintiff incorporates by reference each and every allegation set forth in the foregoing paragraphs.

66. Plaintiff was raped, harassed and discriminated against due to her gender.

67. Defendant Marshall University's adverse actions, and actions, and failures, committed and perpetrated upon the Plaintiff constitute unlawful sexual harassment and discrimination on the basis of gender.

68. The harassment and discrimination suffered by Plaintiff was sufficiently severe, pervasive, and objectively offensive so as to create an abusive and hostile educational environment for the Plaintiff, and it denied her access to educational opportunities and benefits.

69. One single instance of sexual violence is sufficient to qualify as creating a hostile educational environment.

70. Defendant created and subjected Plaintiff to a hostile education environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(A) in some or all of the following particulars:

    a. In failing to properly punish perpetrators of sexual assaults, thereby creating a hostile environment that fails to discourage or prevent sexual assaults, and favors the perpetrators of sexual assaults as opposed to the victims;

    b. In deceptively encouraging Plaintiff and other females to attend Marshall University by misrepresenting the statistics related to on-campus sexual assaults, and thereby creating a false pretense that Marshall University was a safe school and effectively free of sexual assaults;

    c. In failing to reasonably and promptly conduct the student conduct hearing and appeal hearing, which in turn caused Plaintiff undue stress, kept Joseph Hardin on campus while Plaintiff was attending classes, caused the unavailability of key witnesses, etc.;

   d. In failing to provide the Plaintiff with a balanced and fair investigative and hearing process with the same opportunities to both Plaintiff and her assailant, which in turn led to an unsound and on supportable decision in the expulsion proceeding;

   e. In denying the Plaintiff with a balanced and fair hearing process by excluding her from all other testimony at the appeal hearing;

   f. In conducting the appeal hearing without allowing any physical or circumstantial evidence of the rape, the Plaintiff was denied a balanced and fair hearing process;

   g. In failing to present Joseph Hardin's contradictory and false statements to the student conduct panel at the appeal hearing, the Plaintiff was denied a balanced and fair hearing process;

   h. In permitting Joseph Hardin to have private counsel present and participate in the appeal hearing;

   i. In failing to advise Plaintiff of her right to have private counsel present at the appeal hearing;

   j. In permitting Joseph Hardin's private counsel to cross-examine witnesses and Plaintiff at the appeal hearing directly rather than by the established procedure;

   k. In permitting Joseph Hardin to have character witnesses orally testify on his behalf at the appeal hearing, despite the fact that such witnesses are permissible only in written form and only once a finding has been made and sanctions are being considered;

l. In permitting improper evidence at the appeal hearing, including hearsay statements as introduced by Joseph Hardin's witnesses;

m. In permitting Joseph Hardin's character witnesses to testify for a purpose other than supporting Joseph Hardin's character, namely, to denigrate and discredit Plaintiff;

n. In failing to author, adopt and disseminate a written policy that clearly delineates the student conduct hearing and appeals process, including the rules governing evidence, testimony, procedural issues, etc.;

o. In failing to properly train and educate the members of the student conduct panel, thereby denying the Plaintiff an equitable and impartial hearing process

p. In permitting Joseph Hardin to remain on campus pending his appeal, and/or in otherwise failing to provide Plaintiff accommodations to protect her from coming into contact with Joseph Hardin while the appeal was ongoing;

q. In permitting Joseph Hardin to violate the no-contact order;

r. In applying the incorrect burden of proof to Plaintiff's allegations against Joseph Hardin, namely, a "beyond a reasonable doubt" standard instead of a "preponderance of the evidence" standard;

s. In failing to timely inform Plaintiff of the student conduct panel's decision on the appeal;

t. In failing to provide Plaintiff notification in writing of the student conduct panel's decision;

u. In failing to provide Plaintiff with the basis and/or reasoning behind the student conduct panel's reversal of Ms. Martin's sanctions;

v. In failing to accommodate Plaintiff's class schedule and testing so it did not coincide with the appeal hearing;

w. In failing to properly train and educate the employees, including school officials, officers, investigators, and adjudicators, inappropriate response to allegations of sexual harassment and abuse, as well as the attendant title IX policies and procedures.

x. In violating West Virginia's Rape Shield Law, §61–8B–11 and its own Procedures, by allowing questioning of Plaintiff's menstrual cycle, sexual history, and testimony from character witnesses regarding Plaintiff's sexual history;

y. In accepting and considering incomplete and misleading evidence at the appeal hearing;

z. In failing to follow its written policies, procedures and rules for the handling of sexual assaults and the subsequent disciplinary process;

aa. In failing to provide Plaintiff with a copy in advance of the appeal hearing of Joseph Hardin's statements given as part of the disciplinary process;

bb. In failing to create and maintain a proper record of the disciplinary process, including failing to record or transcribe all statements given to Lisa Martin and in failing to sufficiently record the appeal hearing;

cc. In reinstating Joseph Hardin despite his admitting guilt to sexual battery, a violation of the Code of Conduct, in violation of the Final Decision, and in response to an improper Motion to Reconsider;

dd. In reinstating Joseph Hardin so that he may continue his schooling, thus elevating his interests ahead of Plaintiff's; and

dd.   In reinstating Joseph Hardin on the basis that Plaintiff has dropped out of school, and thus should not be as affected by his reinstatement.

71.   The Defendant's adverse actions, and actions, and failures amount to deliberate indifference towards the unlawful sexual conduct committed upon Plaintiff by Joseph Hardin.

72.   The Defendant is deemed to be deliberately indifferent to the student-on-student violence committed against the Plaintiff, due to the Defendants' clearly unreasonable handling of the title nine investigation and Student Conduct Board hearing for Plaintiff's assailant.

73.   The Defendant acted with deliberate indifference in deviating significantly from the standard of care outlined in the Dear Colleague Letter and the Defendant's own policies.

74.   As a proximate result of the Defendants adverse actions, inactions, violations, and failures, committed and perpetrated upon the Plaintiff, the Plaintiff suffered damages and injuries, including, but not limited to:

   a.   Past and future mental and emotional injuries, including embarrassment, anxiety, depression, stress, humiliation and fear;

   b.   Past and future financial damages, including lost tuition and living expenses, and future lost wages;

   c.   The deprivation of educational opportunities and benefits, including the withdrawal from Marshall University and the abandonment of her major;

   d.   A delay in her educational pursuit and the start of her professional career; and

   e.   Attorneys' fees, costs and expenses.

WHEREFORE, for all of the above reasons, Plaintiff, Alicia Gonzales, demands judgment against the Defendant, Marshall University, for compensatory damages, punitive damages, costs, interest, statutory and civil penalties according to law, attorneys' fees, and all other relief this Court deems appropriate, just and equitable.

ALICIA GONZALEZ<br>
BY COUNSEL

AMY C. CROSSAN (SB 7150)
**BOUCHILLON, CROSSAN & COLBURN LC**
731 5TH AVE
HUNTINGTON WV 25701
(304) 523-8451
(304) 523-0567 Facsimile
acrossan@bcc-wv.com

/s/ Amy C. Crossan