IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**ALICIA GONAZALES,**

    **Plaintiff,**

v.                                                              Civil Action No.: 3:18-cv-00235
                                                                     Judge Robert C. Chambers

**MARSHALL UNIVERSITY
BOARD OF GOVERNORS,**

    **Defendant.**

### DEFENDANT MARSHALL UNIVERSITY
### BOARD OF GOVERNORS' MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

#### I.    INTRODUCTION

Defendant, Marshall University Board of Governors ("Marshall University"), by counsel, Perry W. Oxley, Esq., David E. Rich, Esq., Eric D. Salyers, Esq., and the law firm of Oxley Rich Sammons, hereby files its Memorandum of Law in Support of its Motion for Summary Judgment. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Marshall University is entitled to summary judgment on the Plaintiff's sole count under Title IX because the Plaintiff cannot show that Marshall University was deliberately indifferent, that Marshall University's actions were clearly unreasonable in light of the known circumstances, or that she was subjected to an ongoing hostile environment. No genuine issues of material facts exist with respect to the aforementioned issues. In support of its Motion, the Defendant states as follows:

#### II.    STATEMENT OF FACTS

The Plaintiff filed her Complaint filed on or about January 31, 2018. *See* ECF 1. This case involves the alleged sexual assault on Plaintiff by Joseph Chase Hardin, another student enrolled

1

in Defendant's university, on or about February 1, 2016. *Id*. By all accounts, Ms. Gonzales and Mr. Hardin had a cordial friendship prior to February 1, 2016. *See* Deposition of Alicia Gonzales, the relevant portions of which are attached hereto as **Exhibit A**, at pg. 39, 45-47, 57; *See also* Deposition of Joseph Chase Hardin, the relevant portions of which are attached hereto as **Exhibit B**, at pg. 9-10. On February 1, 2016, Ms. Gonzales and Mr. Hardin entered Ms. Gonzales' dormitory building, where Ms. Gonzales signed Mr. Hardin in. *See* Exhibit A, at pg. 55. Ms. Gonzales alleges that Mr. Hardin sexually assaulted her after they entered into Ms. Gonzales' dorm room. *See* Exhibit A, at pg. 89. What exactly happened in the dorm room is up for debate. *See* Deposition of Lisa Martin, the relevant portions of which are attached hereto as **Exhibit C**, at pg. 50-51.

Officer McCallister of the Marshall University Police Department met with the Plaintiff on February 2, 2016, to explain the process to her. *See* Exhibit A, at pg. 180-181, 247-248. On February 3, the Marshall University Police Department transported the Plaintiff and her two friends to the Cabell County Courthouse, so that she could obtain a temporary restraining order against Joseph Hardin. *See* Exhibit A, at pg. 172, 248. The Plaintiff admits that Officer McCallister of the Marshall University Police Department treated her well after the incident and was trying to do what was best for her. *See* Exhibit A, at pg. 172-173.

On February 8, 2016, Ms. Gonzales reported the alleged sexual assault to Ms. Lisa Martin, the Director of Student Conduct. *See* Exhibit A, at pg. 187; *See also* Deposition of Lisa Martin, the relevant portions of which are attached hereto as **Exhibit C**, at pg. 21. On February 9, 2016, Ms. Martin sent a letter Mr. Hardin, charging him with a violation of sexual assault under Standard 2, Section 2.C. of the Marshall University Student Code of Rights and Responsibilities and initiated the Title IX investigation. *See* Exhibit A, at pg. 248; *See also* Exhibit C, at pg. 29, and

Deposition of Courtney Bullard, the relevant portions of which are attached hereto as **Exhibit D**, at pg. 36-37. In this "charge letter," Mr. Hardin was instructed not to contact Ms. Gonzales, or her friends, and he was banned from the residence halls. *See* Exhibit A, at pg. 223.

On February 22, 2016, Lisa Martin met with the Plaintiff and her mother to further explain the process with the University. *See* Exhibit A, at pg. 194, 204-205.

On March 10, 2016, Ms. Martin sent a letter finding Mr. Hardin responsible for violating Standard 2, Section 2.C. of the Marshall University Student Code of Rights and Responsibilities and expelled him from Marshall University. *See* Exhibit C, at pg. 67; *see also* Exhibit D, at pg. 39-41. The next day, March 11, 2016, Mr. Hardin appealed the decision of Ms. Martin. *See* Exhibit D, at pg. 49.

On April 27, 2016, Lisa Martin met with the Plaintiff and her witnesses in preparation for the hearing. *See* Exhibit A, at pg. 206-207.

On May 4, 2016, the hearing was conducted before Michelle Barbour (Hearing Officer), Ashlee Spencer (Student Panel Member), Nicholas "Alex" O'Donnell (Student Panel Member), and Melissa "Missy" Reed (Faculty Panel Member). *See* Deposition of Michelle Barbour, the relevant portions of which are attached hereto as **Exhibit E**, at pg. 47. Ms. Martin represented the University and presented the case against Mr. Hardin. *See* Exhibit E, at pg. 56. Mr. Hardin was represented by Anthony Spenia and Elizabeth Estep. *See* Exhibit E, at pg. 49. Upon conclusion of the hearing, the Student Conduct Panel found Mr. Hardin not responsible for the violation of Standard 2, Section 2.C. of the Marshall University Student Code of Rights and Responsibilities. *See* Exhibit D, at pg. 91.

The Student Conduct Panel was not able to determine if the sexual contact was consensual and stated that they lacked clear evidence against Mr. Hardin. *See* Exhibit D, at pg. 91.

Accordingly, no sanction against Mr. Hardin was issued. *See* Exhibit D, at pg. 109-110. Lisa Martin advocated for Ms. Gonzales, so much so that she was moved to tears informing Ms. Gonzales of the decision. *See* Exhibit A, at pg. 244, 246.

After the hearing, on May 4, 2016, Lisa Martin told Ms. Gonzales that she could appeal the decision and that they could meet to talk about it. *See* Exhibit A, at pg. 209. On May 6, 2016, Lisa Martin again met with the Plaintiff to discuss her options, including how to file any appeals. *See* Exhibit A, at pg. 207. The Plaintiff never appealed the decision of the hearing panel. *See* Exhibit A, at pg. 217, 219-220; *See also* Exhibit D, at pg. 113, 189.

On May 11, 2016, Carla Lapelle, the Interim Dean of Student Affairs, *sua sponte* issued a recommendation to Marshall University President Jerome Gilbert that Mr. Hardin be banned from Marshall University until the conclusion of his criminal trial, but still be permitted to take online courses. *See* Exhibit A, at pg. 249-250; *see also* Exhibit D, at pg. 115-116. Ms. Lapelle explained that her decision was based on the fact that she wanted to protect Ms. Gonzales throughout the criminal process. *See* Exhibit D, at pg. 116, 120; S*ee also* Deposition of Carla Lapelle, the relevant portions of which are attached hereto as **Exhibit F**, at pg. 35-36. President Gilbert adopted Ms. Lapelle's recommendations. *See* Exhibit A, at pg. 249-250; *See also* Exhibit D, at pg. 125.

On May 12, 2016, Mr. Hardin appealed the decision to ban him from campus. *See* Letter dated March 30, 2017, attached hereto as **Exhibit G**. Pursuant to University policy, President Gilbert lifted the ban on Mr. Hardin pending his appeal. *See* Exhibit G. However, the no-contact order remained in effect. *See* Exhibit A, at pg. 250. Mr. Hardin's appeal was directed to Debra Hart, Marshall University's Title IX Officer. *See* Exhibit G.

On June 1, 2016, Ms. Hart wrote to Elizabeth Estep and Anthony Spenia, counsel for Mr. Hardin, and Candace Kraus, counsel for Marshall University, informing them that she has been

4

appointed as the hearing officer for Mr. Hardin's appeal by Marshall University's Board of Governors and has authority to render a decision regarding the same. *See* Exhibit G. She asked both parties to submit briefs regarding the issue before she decides if oral argument is necessary. *See* Exhibit G. Both parties subsequently submitted undated briefs. Ms. Gonzales elected not to provide a brief on the issue despite being offered to participate in the briefing schedule. *See* Exhibit G.

On August 18, 2016, Ms. Hart issued a ruling affirmed the decision to ban Mr. Hardin from Marshall University's campus until the resolution of his criminal trial, only allowing him to take online courses. *See* Exhibit A, at pg. 222, 250; *see also* Exhibit D, at pg. 128-129.

On January 11, 2017, Mr. Hardin entered into a Kenney Plea to the misdemeanor offense of battery and was sentenced to three years of probation. *See* Exhibit G.

On January 20, 2017, Mr. Hardin formally requested a reconsideration of his ban from Marshall University, due to the conclusion of his criminal case. *See* Exhibit A, at pg. 251. On January 23, 2017, notice was sent to counsel for Ms. Gonzales informing her of Mr. Hardin's request for reconsideration and his return to campus. *See* Exhibit G.

On February 1, 2017, Ms. Gonzales, through counsel, responded to Mr. Hardin's request for reconsideration. *See* Exhibit G. On March 14, 2017, Mr. Hardin responded to the letter written on behalf of Ms. Gonzales. *See* Exhibit G. On or about March 30, 2017, Mr. Hardin was permitted to return to campus. *See* Exhibit G. Mr. Hardin was at a point where he was required to take on-campus courses in order to complete his degree. *See* Exhibit G. Further, Marshall University reasoned that since Ms. Gonzales was no longer on campus, there was no opportunity for interaction between her and Mr. Hardin. *See* Exhibit G. While Mr. Hardin was allowed to attend classes on campus, he was not allowed in the residence halls, to participate in extracurricular

activities, or attend the Rec Center. *See* Exhibit G. These restrictions were put in place for the 2017-2018 school year. *See* Exhibit G.

Many of the above events, to the Plaintiff's own admission, favored her. *See* Exhibit A, at pg. 252. Ms. Gonzales left campus after her freshman year was concluded on May 6, 2016, prior to the resolution of the Title IX process. *See* Exhibit A, at pg. 250. She started her admission process to Slipper Rock University in July of 2016. *See* Exhibit A, at pg. 221-222.

Plaintiff claims that, as a result of the sexual assault she allegedly suffered, and the Defendant's alleged deliberate indifference to such assault, she suffered damages related to, *inter alia*, emotional injuries, lost tuition, forced withdrawal from Marshall University, the abandonment of her major, and a delay in her educational pursuit and the start of her professional career. *See* ECF 1, at ¶ 74. However, as stated herein, many of the actions of the Defendant favored Ms. Gonzales. In fact, Plaintiff's own expert, Ms. Bullard, withdrew criticisms from her expert report, admitting that Marshall responded promptly with a no-contact order and that Mr. Hardin provided a sufficient basis for an appeal. *See* Exhibit D, at pg. 146-147. Ms. Bullard's basis for her initial opinion that the Plaintiff was being subjected to an ongoing hostile environment (that the Plaintiff saw Mr. Hardin at a basketball game) was a misconception, as the Plaintiff did not actually see Mr. Hardin at a basketball game, she merely saw a photograph of him at the game. *See* Exhibit D, at pg. 195-196, 226. Ms. Bullard does not opine that Marshall University was deliberately indifferent, either in her deposition testimony or her report, despite admitting she has previously analyzed the issue of whether a school was deliberately indifferent. *See* Exhibit D, generally and pg. 16. Likewise, Ms. Bullard did not testify once in her deposition that the actions of Marshall University were clearly unreasonable in light of the known circumstances. *Id*. Ms.

Bullard essentially only opines that Marshall University did not follow "best practices," which is not the standard at issue. *Id*.

Marshall University's expert, Brett Sokolow, opined "the school acted in ways that gravely exceeded the standards for what is reasonable in light of the known circumstances, and that [he] continue[s] to be somewhat baffled on what basis anybody could claim that this was a response by the school that was deliberately indifferent." *See* Deposition of Brett Sokolow, the relevant portions of which are attached hereto as **Exhibit H**, at pg. 28. As explained by Mr. Sokolow, the Plaintiff and her expert seek to hold Marshall University to an ideal standard. *Id*. at pg. 28-29. Once Marshall investigated the allegation and put a no-contact order and residence hall restriction in place, Title IX was satisfied. *Id*. at pg. 73-74.

### III. LAW AND ARGUMENT

#### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that either complete or partial summary judgment may be granted when it appears that there is "no genuine issue as to any material fact." A genuine issue exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson* at 247-48 (emphasis original).

"In other words, summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 973-74 (4th Cir. 1990)

7

(citing *Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950)). "On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Miller*, 906 F.2d at 974 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Miller*, 906 F.2d at 974 (citing *Matsushita Elec. Indus. Co., Ltd*, 475 U.S. at 587; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

"Only where persons of reasonable minds may not fairly differ on the proper inferences to be drawn from the facts, does the issue of proximate cause become a question of law for the court." *Qura v. D R McClain & Son*, No. 95-1744, 1996 U.S. App. LEXIS 25510, at *11-12 (4th Cir. Sep. 30, 1996).

In this case, the Plaintiff brought a single claim against Marshall University for an alleged violation of her civil rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). *See generally* ECF 1. Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a). In order to establish a Title IX claim, the Plaintiff must prove: "(1) [P]laintiff was a student at an educational institution receiving federal funds; (2) [Plaintiff] was subjected to harassment based on [her] sex; (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity; and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

The leading Supreme Court cases impacting school liability under Title IX are *Gebser v. Lago Vista,* 524 U.S. 274 (1998) and *Davis v. Monroe County*, 526 U.S. 629 (1999). Liability via a private right of action under Title IX exists when "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the [accused party's] misconduct." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, p. 285 (1998). The *Gebser* decision continues: "Thus, a damages remedy will not lie unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination and fails adequately to respond." *Id*. at p. 276. Further, "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640, 119 S. Ct. 1661, 1670 (1999).

"Deliberate indifference is a high bar," and "neither negligence nor mere unreasonableness is enough." *Qayumi v. Duke Univ.,* 2018 U.S. Dist. LEXIS 64876 (2018), citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.,* 647 F.3d 156, 167 (5th Cir. 2011). Deliberate indifference" has been defined as a response by a school that is "clearly unreasonable in light of the known circumstances." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72 (1st Cir. 2007) (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

In *Davis*, the Supreme Court specifically stated:

> We stress that our conclusion here—that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment—does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. We thus disagree with respondents' contention that, if Title IX provides a cause of action for student-on-student harassment, "nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability or damages." [Citations omitted]. Likewise, the dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands. [Citations omitted]. In fact, as we have

9

previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators. [Citations omitted]. School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances. *Davis v. Monroe County Board of Education,* 526 U.S. 629, 648 (1999).

Moreover, the 4th Circuit has specifically held that "deliberate indifference" requires a pattern of evidence demonstrating that the school knew or should have known the approach would cause harm and that they were therefore choosing to cause that harm by continuing the approach. *Doe v. Russell County School Board,* 292 F.Supp. 3d 690 (2018).

The 4th Circuit has emphasized that the high standard of "deliberate indifference" "precludes a finding of deliberate indifference in all but limited circumstances." *Doe v. Board of Education,* 982 F.Supp.2d 641 (2013). The Fourth Circuit has affirmed that liability does not attach when the defendant "responds to reports of student-on-student sexual harassment, but simply does not do enough to stop the problem." *Facchetti v. Bridgewater College,* 175 F.Supp.3d 627 (2016), citing *Doe v. Bd. Of Educ.*, 982 F.Supp.2d 641 (2013). "If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subjects' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45, 119 S. Ct. 1661, 1672 (1999). Moreover, the "failure to follow sexual harassment grievance procedures does not prove deliberate indifference under Title IX" in the Fourth Circuit. *Doe v. Board of Education,* 982 F.Supp.2d 641 (2013).

### B. The alleged harassment suffered by Plaintiff was not sufficiently severe or pervasive to create a hostile environment in an educational program or activity.

The Plaintiff has failed to make a showing sufficient to establish harassment severe or pervasive enough to create a hostile environment in Defendant's educational programs and

10

activities. The U.S. Supreme Court, as well as other courts, has expressed strong doubts that a single incident of harassment is actionable under Title IX. See *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652–53 (1999) ("Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to [be actionable], we think it unlikely that Congress would have thought such behavior sufficient to rise to [actionable] level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment . . . ."). See also *Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003) ("The behavior must also be severe enough to have a 'systemic' effect of denying the victim equal access to an educational program or activity. We take this to mean that gender discrimination must be more widespread than a single instance of one-on-one peer harassment and that the effects of the harassment touch the whole or entirety of an educational program or activity . . .."). See also *Ross v. Corp. of Mercer Univ.,* 506 F. Supp. 2d 1325, 1357–59 (M.D. Ga. 2007). The Plaintiff in *Ross* claimed she was sexually assaulted on one occasion by a fellow student, and the court held, in light of *Davis* and *Hawkins*:

> "the Court must conclude that [the Plaintiff] has failed to show that the discrimination she allegedly suffered was so severe, pervasive and objectively offensive as to have the 'systematic effect' of denying her equal access to an educational program or activity. . . [T]he Court does not mean to imply that rape is not a horrific crime, or that a single instance cannot constitute severe and objectively offensive discrimination. However, the Court must conclude that a single incident, however traumatic to its victim, is not likely to be pervasive, or to have a systemic effect on educational activities . . . Therefore . . . the Court concludes [the Plaintiff] has failed to provide enough evidence for a jury to conclude her discrimination was severe, pervasive and objectively offensive. Mercer is entitled to summary judgment on this claim." *Id.* at 1358–59.

Judge Irene Berger with the Southern District of West Virginia recently ruled on a Title IX case on February 1, 2017. See *Farley v. New River Cmty. & Tech. Coll.*, No. 5:16-cv-09442, 2017 U.S. Dist. LEXIS 13631 (S.D. W. Va. Feb. 1, 2017). In *Farley*, a professor sent inappropriate

11

pictures to a student. *Id* at 4. Thereafter, the student reported the conduct and an investigation was initiated. *Id*. The student alleged that the school only interviewed her, and that they attempted to minimize the incident. Approximately one month later, the professor resigned from the College. *Id*. at 5. The student alleged that, as a result of the Professor's conduct and subsequent lack of investigation by the school, she lost her passion for school, her attendance fell, and her grades slipped. *Id*.

In *Farley*, the court focused on whether the acts were severe or pervasive, and whether those acts crated a hostile environment. *Id*. Taking the Plaintiff's allegations as true, the court determined that the string of lewd text messages were severe and pervasive. *Farley,* at 12. However, the court ruled that they did not create a hostile environment, because the Plaintiff produced no evidence that she was "was forced to endure sexual harassment on a regular basis while earning her degree." *Id*. at 16. The court in *Farley* explained that she was not required to have continued contact, not subject to the professor's leadership, and does not claim any similar actions occurred after the conduct that was alleged. *Id*.

Here, the Plaintiff was not required to have continued contact with her accuser. In fact, Mr. Hardin was immediately issued a no-contact order preventing him from contacting her, or her friends or family, in person or via social media. Moreover, Mr. Hardin was banned from the residence halls. Additionally, Lisa Martin testified in her deposition that she checked both Mr. Hardin's and Mr. Gonzales' class schedules to ensure there would be no overlap and that they would not run into each other. *See* Exhibit C, at pg. 150-151. The Plaintiff's allegation of seeing Mr. Hardin through a photograph at a basketball game is simply not enough to create an ongoing hostile environment. Neither is the single allegation of sexual assault.

The Plaintiff also alleges that was once laughed at by Mr. Hardin and his friends after work. Mr. Hardin denies that this ever occurred. Nonetheless, even if true, this action would not deprive of her any educational benefits. As a result, the Defendant is entitled to summary judgment.

**C. There is no basis for imputing liability to the institution.**

"Under Title IX, an imputation of liability to an educational institution has two pertinent aspects: (1) whether the institution had actual knowledge of the student-on-student sexual harassment; and (2) whether the institution was deliberately indifferent to that harassment." *Doe v. Bd. of Educ.*, 605 F. App'x 159, 167 (4th Cir. 2015); See also *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290–91 (1998). "An educational institution can be liable on a deliberate indifference theory only when its response to known harassment is clearly unreasonable." *Doe v. Bd. Of Educ.*, 605 F. App'x at 167 (internal quotation marks and citation omitted). Deliberate indifference, in other words, is "an official decision by the recipient [of knowledge of harassment] not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. at 290. Deliberate indifference is not a negligent standard. The standard is not an open invitation for courts, which are often unacquainted with the realities of and constraints on school discipline, to "second guess" school actions with the benefit of hindsight. *Davis*, 526 U.S. at 648. Further, it is important to keep in mind that Title IX does not mandate "particular disciplinary action[s]," and the law does not entitle victims to a "right to make particular remedial demands." *Id*. "On summary judgment, a court is entitled to decide that the educational entity's response was not clearly unreasonable as a matter of law." *Doe v. Bd. Of Educ.*, 605 F. App'x at 167 (internal quotation marks and citation omitted).

Judge Irene Berger also ruled on a recent Title IX case on April 12, 2017. See *Rex v. W. Va. Sch. of Osteopathic Med.*, No. 5:15-cv-01017, 2017 U.S. Dist. LEXIS 56300, (S.D. W. Va.

Apr. 12, 2017). *Rex* involved peer-to-peer harassment and the facts are very similar to our case at hand. In *Rex*, a medical student alleged that a fellow student drugged and raped her after an off-campus party. *Id*. at 3. The plaintiff reported the alleged rape and asserted that the school mishandled the investigation and created such a hostile environment that she was forced to withdraw and transfer to another medical school. *Id*.

As in our case, the issue as to whether consent was given was unclear. *Id*. at 5-9. The plaintiff took multiple issues as to how the investigation was handled. *Id*. at 13-14. Ultimately, the medical school found her claim unfounded, even though they believed it was more likely than not she was incapacitated during the alleged sexual assault. *Id*. at 14-15. However, they upheld a mutual no contact order between the two students and found that the alleged assailant violated other school policies. *Id*. at 15. The plaintiff appealed this finding; however, the school dismissed her appeal, stating, without much explanation, that she did not have grounds for the appeal. *Id*. at 16-17.

In the denied appeal, she submitted a hair follicle test that showed traces of GHB, a date rape drug, and she argued that the investigation was not adequate, reliable, or impartial, and was untimely. *Id*. at 16. After her appeal denial, the plaintiff submitted the results of a more sophisticated hair test which found diazepam in her system, which is an anxiolytic and sedative. *Id*. at 17. While the school asked why the two different hair tests showed different results, they apparently did nothing else with the information. *Id*. The plaintiff ultimately took a medical leave of absence and transferred to another school. *Id*. at 17-18.

In granting summary judgment for the medical school, the court noted the issue of whether consent was given and stated "[t]his Court cannot properly review the credibility determinations made by the institution performing a Title IX investigation." *Id*. at 26. Ultimately, the court found

that the medical school "met its burden of showing that there is no genuine issue of material fact with respect to alleged deliberate indifference" and noting that they "addressed her concerns." *Id*. at 27. In addition to granting the medical school summary judgment as to plaintiff's Title IX claim, the school was also granted summary judgment as to a Title IX retaliation claim, invasion of privacy claim, negligence claim, unauthorized practice of law claim, and intentional infliction of emotional distress claim. *Id*. at 27-32.

The Plaintiff has not made a showing sufficient to establish deliberate indifference. In fact, the Plaintiff's allegations in her Complaint itself show that the Defendant was not deliberately indifferent to her allegations of harassment:

> 20. [The day after the alleged assault], Plaintiff and her two best friends went to the Marshall University Police Department and reported the rape of her by Joseph Hardin.
> 21. That same day, the rape was reported by the Marshall University Police Department (hereinafter "MUPD") to Lisa Martin, Marshall University's Director of Student Conduct.
> 22. [Two days after the alleged assault], the MUPD transported Plaintiff and her two friends to the Cabell County Courthouse so that Plaintiff could obtain a temporary restraining order (hereinafter "OOP" – order of protection) against Joseph Hardin.
> …
> 24. [A week after the alleged assault], Plaintiff was transported by the MUPD to Lisa Martin's office and proceeded to give a statement regarding the rape for the purposes of initiating the university disciplinary process, with a complaint being filed and opened with the Office of Student Conduct.
> 25. Joseph Hardin was interviewed by Lisa Martin on February 18, 2016.
> …
> 28. On March 10, 2016, Lisa Martin notified Plaintiff and Joseph Hardin that she had reached a decision on the disciplinary charges and that she had determined that Joseph Hardin had raped the Plaintiff.
> 29. Lisa Martin ordered Joseph Martin to be expelled from Marshall University.
> 30. On March 11, 2016, Joseph Hardin appealed Lisa Martin's decision. Joseph Hardin remained on campus during the appeal process.
> …
> 32. Ultimately, the student conduct panel conducted a hearing on May 4, 2016.

>43. Ultimately, the student conduct panel found that there was insufficient evidence to uphold Joseph Hardin's expulsion, and determined that no sanctions should be levied against him.
>…
>46. However, before the Title IX Coordinator reviewed the matter, Marshall University's Interim Dean, Carla Lappelle, reviewed the hearing process and materials, and advised Marshall University President Jerome Gilbert that she recommended Joseph Hardin be banned from campus until the criminal case was completed. [Joseph Hardin had been allowed to remain on campus during the appeal process].
>47. President Gilbert accepted Dean Lapelle's recommendation, and Joseph Hardin was suspended from campus pending the outcome of the criminal case, but he was permitted to take online classes.
>48. On May 12, 2016, the following day, Joseph Hardin appealed President Gilbert's determination.
>50. The appeal was assigned to Marshall University's Title IX Coordinator, Debra Hart.
>51. On August 18, 2016, Joseph Hardin's appeal was denied. . .
>…
>54. On January 11, 2017, Joseph Hardin pled guilty to the criminal offense of battery related to the incident that took place on February 1, 2016.
>…
>57. Joseph Hardin, after his guilty plea, filed a Motion for Reconsideration, asking that he be reinstated to the University;
>…
>60. On or about March 30, 2017, Marshall University granted Joseph Hardin's Request for Reconsideration.

Contrary to deliberate indifference, the Plaintiff's Complaint itself demonstrates that Defendant took her case seriously and did not harass her in pursuit of her claim. The Plaintiff's Complaint also shows that the Defendant did in fact have established Title IX procedures in place at the time of the alleged incident. Further, the Plaintiff's Complaint in the instant case displays that Defendant did not deliberately deprive her of internal and external forms of support or call into question the Plaintiff's safety on campus. Instead, the Complaint itself confirms that the Plaintiff was heard by the Defendant's Director of Student Conduct, the Defendant's Interim Dean, the President of the University, and the Defendant's established Title IX Coordinator, and that an appropriate response was provided. The Plaintiff was also escorted by MUPD to the Cabell County

Courthouse to file her OOP, and to the Director of Student Conduct. The deposition testimony in this case thus far supports these facts.

Marshall University simply did not engage in deliberate indifference and their actions in this case were reasonable. Marshall University immediately issued a no-contact order after the filing of the Title IX Complaint with Lisa Martin. Further, Marshall University initially expelled Mr. Hardin. After his appeal, a hearing panel found him not responsible under a preponderance of the evidence standard. Despite this finding, Marshall University, on its own recognizance and without an appeal, banned Mr. Hardin from campus pending the outcome of his criminal proceedings. They later upheld that ban, and, when it was clear that he had never been found guilty of any sexual misconduct by any type of judicial body, that Ms. Gonzales was no longer on campus at Marshall University, and that he could no longer continue to take online courses, Marshall University allowed Mr. Hardin to return to campus, with significant restrictions, such that he essentially only be permitted to attend classes.

Additionally, Ms. Gonzales never appealed the decision of the hearing panel. Rather than appeal, she decided to leave Marshall University. Moreover, the Plaintiff was not repeatedly subjected to any type of contact by the accused. Thus, Marshall University ultimately let Mr. Hardin back on campus, as there was no reason to keep him banned from campus. In fact, Mr. Hardin testified that he hasn't had any contact with the Plaintiff since a few days following the alleged incident. See Exhibit B, at pg. 17. Furthermore, Marshall University was aware of Mr. Hardin's probation order that would result in him spending up to three years in jail if it were violated.

Perfection is not the legal standard. Marshall University's actions, at the very least, were not clearly unreasonable. They went above and beyond what was required of them. As a result, Marshall University is entitled to summary judgment.

## IV. CONCLUSION

**WHEREFORE,** for the reasons stated above, the Defendants, Marshall University Board of Governors, respectfully request the Court grant summary judgment in Defendants' favor.

**MARSHALL UNIVERSITY BOARD OF GOVERNORS,**

**By Counsel,**

s/Eric D. Salyers
Perry W. Oxley (WVSB #7211)
David E. Rich, Esq. (WV Bar #9141)
Eric D. Salyers (WVSB #13042)
OXLEY RICH SAMMONS
P.O. Box 1704
517 9th Street, Suite 1000
Huntington, West Virginia 25718
Phone: (304) 522-1138

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT HUNTINGTON

**ALICIA GONAZALES,**

       **Plaintiff,**

**v.**                                            **Civil Action No.: 3:18-cv-00235**
                                                   **Judge Robert C. Chambers**

**MARSHALL UNIVERSITY**
**BOARD OF GOVERNORS,**

       **Defendant,**

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant, Marshall University Board of Governors, served the foregoing "***Defendant Marshall University Board of Governors' Memorandum of Law in Support of its Motion for Summary Judgment***" by electronically filing a true copy of the same with the Clerk of the Court using the CM/ECF system on this **6th** day of **May**, **2019**.

                                Amy C. Crossan, Esq.
                       Bouchillon, Crossan & Colburn, L.C.
                                  731 Fifth Avenue
                                 Huntington, WV 25701
                     *Co-Counsel for Plaintiff, Alicia Gonzales*

                               Johnathan M. Gesk, Esq.
                                Gesk & Moritz, LLC
                                14 E. Main Street
                                Carnegie, PA 15106
                   *Co-Counsel for Plaintiff, Alicia Gonzales*

                                                s/Eric D. Salyers
                                                Perry W. Oxley (WVSB #7211)
                                                David E. Rich, Esq. (WV Bar #9141)
                                                Eric D. Salyers (WVSB #13042)