# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# At Huntington

ALICIA GONZALES,

      Plaintiff,

v.                                                                                Civil Action No.: 3:18-cv-00235
                                                                               Judge Chambers

MARSHALL UNIVERSITY
BOARD OF GOVERNORS,

      Defendant.

## **PLAINTIFF'S PROPOSED PRE-TRIAL ORDER**

Now comes the Plaintiff, Alicia Gonzales, pursuant to this Court's Scheduling Order, and hereby tenders her Proposed Pre-Trial Order:

**I.  F.R. Civ. P. 26(a)(3) Disclosures:**

(A) Witnesses:

1. Alicia Gonzales
2. Keith Gonzales
3. Keith Gonzales, Sr.
4. Madison Summers
5. Ashton Marcum
6. Donnel Horn
7. Courtney Bullard
8. Lisa Martin
9. Carla Lapelle
10. Jerome Gilbert
11. Debra Hart
12. Beth Calvert

(B) Designation of Witnesses whose testimony is expected to be presented by means of deposition:

1. Dr. Carlos Golfetto
2. Joseph Chase Hardin

(C) Identification of each document or exhibit which party expects to offer and which may offer if need arises:

1. 2/9/16 letter from Marshall University to Joseph Hardin
2. 2/11/16 email Martin-Strougher
3. Lisa Martin Timeline
4. MU Student Conduct Informational Meeting Checklist
5. 3/10/16 letter from Marshall University to Joseph Hardin
6. 3/11/16 email from Joseph Hardin to Matt James
7. 3/30/16 email from Alicia Gonzales to Lisa Martin
8. 4/27/16 email from Lisa Martin to Estep & Spenia
9. Martin's Hearing Outline
10. 2015-2016 Marshall University Handbook
11. Cabell County Personal Safety Order
12. Photograph of toilet
13. MUBOG Policy No. GA-16
14. Student Conduct Panel Recommendations
15. 5/11/16 letter from Carla Lapelle to Jerome Gilbert
16. 5/11/16 letter from Jerome Gilbert to Carla Lapelle
17. 8/17/16 letter by Hart
18. 3/30/17 letter from Debra Hart to Estep & Spenia
19. Joseph Hardin Kennedy Plea
20. U.S. Department of Education Dear Colleague Letter dated 4/4/11
21. 6/1/16 letter from Debra Hart to Estep & Spenia
22. May 4, 2016 Hearing Transcript
23. Marshall University's Response to Joseph Hardin Appeal
24. 2/19/16 Student Conduct Justices training schedule
25. PAAR Records
26. Dr. Morgan Flaherty's medical records and notes
27. Cabell Huntington Hospital records
28. Alicia Gonzales' text messages to Joseph Hardin
29. Alicia Gonzales' academic transcript from Marshall University
30. Alicia Gonzales' tuition and board account statement from Marshall University
31. Any and all documents produced during discovery if necessary.

Witnesses:

**II. Contested Issues of Law Requiring Pre-Trial Ruling:**

The Defendant has pending a Motion for Summary Judgment regarding the Plaintiff's claim. The Plaintiff opposes the granting of summary judgment.

**III. Essential Elements of Plaintiff's Case and Damages for Relief Sought:**

The Plaintiff has one count pending. The count with requisite proof is as follows:

A. To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

B. The available damages for the above referenced cause of action are general compensatory and special damages, including lost wages, emotional distress damages, damages for humiliation, annoyance, embarrassment, attorney fees and punitive damages.

### IV. Summary of Material Facts and Theories of Liability:

On February 1, 2016, Alicia Gonzales was raped in the middle of the day by a fellow student while in her dorm room at Marshall University. Martin is the Director of Student Conduct and investigates student complaints to determine whether the student is responsible or not responsible. On February 8, 2016, Ms. Gonzales told Ms. Martin that she had been assaulted by Chase Hardin and that she wanted to file charges against him. Ms. Martin acknowledged that the goal of Title IX proceedings is to get a prompt and fair resolution, for both the complainant and the alleged perpetrator.

The Marshall University Board of Governors, Policy Number GA–16, titled "*Student Sexual Misconduct*" provides that both the complainant and accused student may have a trained student advisor assigned to help them. Marshall determined that it would be best if Mr. Hardin had an advisor with him when he met with Ms. Martin. Ms. Martin contends that she told Ms. Gonzales that she could have a trained student advisor, but there were no writings to substantiate that. Ms. Gonzales testified that she was never offered a student advisor.

At their meeting, Ms. Martin gave Mr. Hardin a Student Checklist titled "*Students Rights and Responsibilities*". The checklist states that the student has a right to have an advisor present, whose role it is to provide advice and support, but they may not speak for the student or address the committee, hearing officer or any witnesses. She did not give Ms. Gonzales this checklist. No policy allows a lawyer to directly question the witnesses or the victim. Martin admitted that this rule was not followed in the Gonzales process. In fact, Mr. Hardin's lawyers addressed the committee and questioned the witnesses, including Ms. Gonzales. The checklist also states that character witnesses are not able to present information during a hearing, but they may submit a written statement.

On February 25, 2016, Ms. Gonzales sent an e-mail to Ms. Martin telling her that Mr. Hardin had her headband on at a basketball game, and she felt like it was mocking her. Mr. Hardin was questioned about it but no further action was taken. She was also mocked on social media by three of Mr. Hardin's friends.

On March 10, 2016, Ms. Martin sent a letter to Mr. Hardin advising him that she found him responsible and that he was expelled effective immediately. Mr. Hardin appealed Ms. Martin's expulsion. When he appealed, the expulsion was lifted. Ms. Martin scheduled a student conduct panel hearing, which she allowed Mr. Hardin to reschedule four times. Title IX guidance from the Department of Education, the "Dear Colleague" letter, provides that a decision should be reached within 60 days from the start of the investigation. The hearing was finally scheduled for April 28, 2016. However, that hearing did not go forward due to a procedural objection by Mr. Hardin's attorneys. Ms. Gonzales told Ms. Martin that Wednesday was a super busy day for her, but any other day would work. The hearing ultimately took place on Wednesday, May 4, in the middle of her final exams.

Ms. Gonzales and others told Ms. Martin that they felt like Mr. Hardin was taking this as a joke, and that he had been bragging that he had a key to the residence halls. Her graduate assistant, Mr. Neal, told her that he saw Mr. Hardin coming out of Twin Towers East. Being in the residence hall would have been a student conduct violation because it violated the order. Ms. Martin intended to bring this up at the student conduct panel hearing, as it was a second violation, but she never did.

Ms. Gonzales says that Ms. Martin did not tell her that she could have an attorney. The hearing officer was Michelle Barbour, who had worked at the same law office as one of Mr. Hardin's counsel. The attorneys for Mr. Hardin asked the questions. Ms. Gonzales felt that Ms. Martin was intimidated by Mr. Hardin's counsel, because Ms. Martin had told her to delete all of their emails as the lawyers had threatened her for being indifferent to him.

Ms. Martin first called Detective McAllister of the Marshall Police Department by telephone. He said that he could not testify to much, including the physical evidence, because of the ongoing criminal case. As physical evidence of the rape, Ms. Martin had a picture of blood in the toilet. Ms. Gonzales was the second witness called. After Ms. Martin questioned Ms. Gonzales, Mr. Hardin's counsel cross-examined her. Ms. Gonzales felt bullied and the attorneys were very aggressive, with Ms. Martin never speaking up. That made her feel betrayed and belittled as Ms. Martin had led her to believe that she was going to speak up for her. After she testified, Ms. Martin told her that she could leave.

Ms. Martin then called two other witnesses, Ashton and Maddie, with Ms. Gonzales not being present. Ms. Martin never told Ms. Gonzales that she could come back in the room and was told she was not permitted back in the room. Because she was not there,

she was not permitted to make an impact statement, even though the policy affords her that right.

At the hearing, Ms. Martin presented a copy of the personal safety order that Ms. Gonzales obtained against Mr. Hardin in Cabell County. Panel member O'Donnell noted that the standard for the safety order and the disciplinary hearing were both preponderance of the evidence and that page 2 of the document was missing. Counsel for Mr. Hardin incorrectly stated that Ms. Gonzales did not meet the preponderance of the evidence standard to have an order granted. Although that was not accurate, as the missing page 2 showed that the safety order was granted, Ms. Martin did not correct this misrepresentation.

Mr. Hardin testified as well as 3 character witnesses. The hearing officer even allowed a witness to testify on behalf of Mr. Hardin, who had no direct knowledge of what happened, that basically said he's a good guy and she had been alone with him, and he had not sexually abused her. Ms. Gonzales was not in the room for the decision, but saw Mr. Hardin gesture a victory punch and he winked at her when he walked past her. After the panel rendered their finding of not responsible, Ms. Martin talked with Ms. Gonzales about an appeal, and emailed Title IX Coordinator Hart to tell her that Ms. Gonzales wanted to appeal. Ms. Gonzales was emotionally distraught and devastated by the finding.

Carla Lapelle was the Interim Dean of Student Affairs and Ms. Martin's supervisor After the student conduct hearing, Ms. Lapelle reviewed the documents and interviewed Ms. Martin, Hearing Officer Barbour, and panel member O'Donnell, trying to find out how the panel came to the decision of not responsible. She believed that the panel found him not responsible because of a lack of evidence available to them due to the criminal

case. Ms. Lapelle wrote a letter to Pres. Gilbert, stating that she believed that the conduct hearing board's decision was not warranted and recommended that Mr. Hardin be banned from campus until the final disposition of his criminal case. Ms. Lapelle felt that if Mr. Hardin was allowed to stay on campus, that would impact Ms. Gonzales' ability to remain on campus and that she could not feel safe. Pres. Gilbert adopted Ms. Lapelle's recommendation. Mr. Hardin appealed, and the ban was lifted.

Deborah Hart is the Director of Equity Programs and Title IX Coordinator and has the final say in Title IX matters. Despite the "Dear Colleague" letter recommending a 60-day resolution, it took about a year to get a final resolution in the Gonzalez matter. In all Title IX complaints, Ms. Hart comes in at the appeal level and could consider sanctions other than just the ban. The University has an obligation to make sure that other students are not going to be exposed to someone who would commit sexual misconduct.

Ms. Hart acknowledged that an appeal of the student conduct panel decision was filed. After reviewing all of the written reports, written statements and available evidence, Ms. Hart determined by a preponderance of the evidence that Mr. Hardin violated the sexual misconduct policy. He was banned from campus until the outcome of his criminal case.

Mr. Hardin entered a Kennedy plea to misdemeanor battery. He then requested that Ms. Hart reconsider his ban. In March of 2017, she granted the reconsideration. In support of her decision, Ms. Hart noted that Ms. Gonzales did not return to campus, although she did not know why she did not return. She acknowledged that even though Ms. Gonzales had not returned, the University still had an obligation to make sure that other students were not going to be exposed to someone who would commit sexual

misconduct. In March of 2017, she stated that "significantly", Mr. Hardin had never been found guilty or responsible for any type of sexual misconduct. However, by letter dated August 17, 2016, Ms. Hart had determined by a preponderance of the evidence that Mr. Hardin violated the sexual misconduct policy.

Ms. Hart allowed Mr. Hardin to return to campus, with social hold restrictions. The restrictions were lifted in the Fall of 2018. Mr. Hardin was accused of sexual misconduct of another student in the Fall of 2018. This is his second allegation of sexual misconduct by a Marshall student. As of April 9, 2019, he was waiting on the decision of the Title IX investigator. He has now been expelled and criminally charged with rape of two other Marshall students.

The Defendants expert is Brett Sokolow. The Plaintiff's expert is Courteny Bullard. Both render opinions in regards to Title IX violations that support their respective parties' position. The Plaintiff's theory of liability is based on a violation of Title IX by the Defendant. The fundamental guidepost for Title IX compliance is equity to both parties, a fair and equitable process that balances the rights of both sides. Included among her opinions is that the Title IX coordinator, Ms. Hart, either misunderstood her role or the University did not give her full authority to do what she should be doing under Title IX. She should have had the ability to overturn the panel's decision and expel Mr. Hardin to ensure compliance with Title IX. The hearing chair, Michelle Barbour, stated that she had never conducted a Title IX hearing, and it was unclear as to what type of training that she had. There was no evidence that the hearing officer, Michelle Barbour, ever said that there was evidence that shouldn't be considered, set forth at the beginning that you're supposed to submit things to her for her to consider to come into evidence. Because Ms. Gonzales was not allowed back in the hearing room, she did not have the

opportunity to test the veracity of anything that Mr. Hardin said or the witnesses. The procedure that was followed was unclear, in that sometimes it was the Code of Conduct, sometimes it was the Sexual Misconduct policy, GA-16. Marshall's policies do not really make it clear on how the hearings are even supposed to be conducted. The ban of Mr. Hardin was not a possible sanction, you have either expulsion or suspension. The University also continually lifted his sanctions after enacted, and there is no reason for lifting a sanction without a showing of some type of irreparable harm. The criminal process and the campus process are completely irrelevant to each other. Letting him back in did not take into consideration the safety of the entire campus.

### V. Contested Issues of Fact and Law:

    a. **Contested Issues of Fact:**

        1. **Was the Plaintiff offered a student advisor.**
        2. **Was the Plaintiff told that she could have an attorney present.**
        3. **Was the Plaintiff made to leave the hearing room after she testified.**

    b. **Contested Issues of Law:**

    A. Whether there is a genuine issue of material fact regarding the Plaintiff's Title IX claim.
    B. The relevancy and admissibility of a picture sent by the Plaintiff to Hardin that was not sent the day of or after the rape.

### VI. Stipulations

Plaintiff proposes the following stipulations:
1. The authenticity of all documents produced during discovery herein, and to the fact that the experts identified by both parties qualify as an expert witness in the subject matter on which they seek to testify.
2. She reported to MUPD that she was raped by Joseph Chase Hardin on February 1, 2016.
3. Hardin was expelled by Lisa Martin on March 10, 2016.

    4.  The expulsion was lifted when Hardin appealed Martin's decision.
    5.  A Student Conduct Panel Hearing was then to be scheduled.
    6.  It occurred on May 4, 2016.
    7.  The hearing was rescheduled multiple times at Hardin's request.
    7.  Ms. Gonzales testified, but most of her testimony was not recorded.
    8.  Ashton Marcum and Madison Summers were called by Martin, but their testimony was not recorded.
    9.  Ms. Gonzales was not in the hearing room after her testimony.
    10.  Hardin testified and called three witnesses.
    11.  Det. McCallister testified but did not bring any physical evidence and did not reveal much due to the criminal case that was pending.
    12.  Ms. Gonzales was not present when the results were announced.
    13.  Ms. Gonzales did not get to provide an impact statement.
    14.  Dean Lapelle banned Hardin from campus pending the outcome of his criminal case after the hearing panel decision.
    15.  Pres. Gilbert upheld the ban of Dean Lapelle.
    16.  Title IX Coordinator Hart heard the appeal, and determined by a preponderance of the evidence that Mr. Hardin violated the sexual misconduct policy letter dated August 17, 2016.
    17.  Hardin entered a Kennedy plea to battery in January of 2017.
    18.  Hardin moved Hart to reconsider the ban.
    19.  In March, 2017, Ms. Hart lifted the ban in March, 2017.
    20.  Hardin was expelled in May of 2019 in a separate allegation of sexual misconduct.

**VII. Suggestions for Avoidance of Unnecessary Proof and Cumulative Evidence:**

  None.

**VIII. Need for Special Procedures for Difficult Aspects of Trial, Complex Issues, Difficult Legal Questions or Unusual Proof Problems:**

  Whether the Defendant can contest that the Plaintiff was in fact raped, when the Defendant agrees that it is not responsible for the rape, only how it carried out the Title IX process.  This is a Title IX proceeding against the Defendant.  The jury will not determine if a rape actually occurred, as Marshall is not being held liable for the rape itself, only their handling of the process once it was reported.  It would waste time to litigate the issue of the rape itself.

**IX. Voir Dire:**

  See below.

**X. Number of Trial Days:**

The Plaintiff estimates that it will take 3 -4 days to try the matter.

**XI.    Courtroom Technology Needed:**

**XII.   Any Other Relevant Matter:**

None.

                         ALICIA GONZALES
                         BY COUNSEL

AMY C. CROSSAN (WVSB 7150)
**BOUCHILLON, CROSSAN & COLBURN, L.C.**
731 FIFTH AVENUE
HUNTINGTON WV 25701
(304) 523-8451
(304) 523-0567 FACSIMILE
acrossan@bcc-wv.com

JONATHAN M. GESK, Esquire (WVSB #12988)
Gesk & Moritz, LLC
14 E. MAIN STREET
CARNEGIE, PA 15106
 /s/ Jonathan M. Gesk

 /s/ Amy C.   Crossan

**PLAINTIFF'S PROPOSED VOIR DIRE**

1. Have you attended college or do you have a daughter that has attended college in the last 10 years?
2. Did you and/or your daughter consider the safety of the school when deciding whether to attend?
3. Have you or your daughter ever been subjected to sexual harassment or sexual assault in a school or work environment?
    If so, was the harassment or assault reported?
4. Some people believe that women are facing more sexual assaults and more sexually aggressive behavior in the last 5 years in both school and the work place.  Others believe the situation is improving due to the public attention being brought to this issue.  Do you have any opinion on whether the situation is getting worse or better?
5. If a student has informed the school that she has been sexually assaulted, do you have any ideas or thoughts on how the school should handle the situation?
6. Some people believe that civil lawsuits are filed too frequently, or the term "sue happy" is used in reference to people that file lawsuits.  Others believe that civil lawsuits help protect the community and/or highlight problems or dangers that need corrected changed.   Do you lean towards one of those groups?
7. The law requires that this case be heard by the community wherein the relevant events occurred.  Do you think it's important that the community of Huntington and the surrounding communities hear this case and make the decision regarding this case?  Why?
8. If you find that Marshall University violated the Plaintiff's Title IX rights, would you feel comfortable issuing a verdict against a local institution?
9. The Plaintiff's only recourse for Marshall University's alleged violation of her Title IX rights was to file a civil lawsuit.  Alicia, if she wins, can't make the university change its procedure or compel them to do or not do anything specific.  All she can do is seek money damages.  Some people believe that requiring a business or school or other entity to pay money damages just means they will end up charging customers and students more down the road.  Whether that is true or not, would that affect your decision as to whether Alicia had her rights violated and what money damages she should be awarded?
10. In a criminal case, if someone is found guilty or pleads guilty, the community is protected from that person moving forward.  In a civil case, when it is determined that the defendant broke the rules and is held responsible, the community is also protected from the defendant acting that way again in the future.  Do you think this type of protection is more important in criminal cases than in civil cases?
11. Have any of you attended Marshall University?
12. Do any of your family members currently attend there?
13. Have any of your family members attended Marshall?
14. Do you or any of your family members or close friends work at Marshall?
15. Do you or any of your family members or close friends go to any Marshall events, such as football games?
16. If yes to any – further inquiry about the nature of the relationship and whether they could be fair and impartial to Marshall.