# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

ALICIA GONZALES,

        Plaintiff,

v.                                                CIVIL ACTION NO. 3:18-0235

MARSHALL UNIVERSITY
BOARD OF GOVERNORS,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Marshall University Board of Governors' Motion for Summary Judgment. ECF No. 82. Plaintiff Alicia Gonzales alleges, in her complaint, a single claim against Defendant for discriminating against her based upon her sex, in violation of 20 U.S.C. § 1681, *et. seq.*, also known as Title IX. *Compl.*, ECF No. 1, at 9. Defendant now moves for summary judgment on this single claim, arguing that Plaintiff cannot show that she was subjected to an ongoing hostile environment or that Defendant was deliberately indifferent to her harassment. *Def's Mot. for Summ. J.*, ECF No. 82, at 1. Plaintiff, on the other hand, asserts that Defendant's motion must be denied because material questions of fact still exist. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, ECF No. 85, at 10.

The parties have fully briefed and argued the issues and the motion is now ripe for adjudication. As explained below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. Background

This case originates from the alleged sexual assault of Plaintiff that occurred while she was enrolled at Defendant's university. *See Compl.*, at ¶ 17. On February 1, 2016, Plaintiff and a fellow student at Defendant's university, Joseph Hardin, entered Plaintiff's dormitory after she signed him into the building. *See Dep. of Gonzales*, ECF No. 82-1, at 7 According to Plaintiff, when she and Mr. Hardin were in her bedroom, he raped her. *See id.* at 8.

The following day, Plaintiff met with Officer McCallister of the Marshall University Police Department ("MUPD") to discuss the incident, and on February 3, 2016, the MUPD took Plaintiff to the Cabell County Courthouse to obtain a temporary restraining order against Mr. Hardin. *See id.* at 9, 11–12, 28–29. Seven days after the alleged rape, on February 8, 2016, Plaintiff told Lisa Martin—Defendant's Director of Student Conduct—that Plaintiff had been assaulted by Mr. Hardin and wanted to file charges against him. *See Dep. of Martin*, ECF No. 86-1, at 4–5. The next day, Ms. Martin sent Mr. Hardin a letter charging him with sexual assault, a violation of the Marshall University Student Code of Rights and Responsibilities, and initiated the Title IX investigation. *See Dep. of Gonzales*, ECF No. 86-2, at 29; *Dep. of Martin*, ECF No. 82-3, at 2–5; *Dep. of Bullard*, ECF No. 82-4, at 3–4. The letter directed that Mr. Hardin not contact Plaintiff or her acquaintances, and banned him from the residence halls. *See Dep. of Bullard*, at 3–4. Additionally, Ms. Martin testified that she reviewed both Mr. Hardin's and Plaintiff's class schedules to ensure that they would not cross paths. *See Dep. of Martin*, ECF No. 82-3, at 5.

After investigating the incident, on March 10, 2016, Ms. Martin found Mr. Hardin responsible for violating the Marshall University Student Code of Rights and Responsibilities, sent him a sanction letter, and expelled him from Marshall University. *See Dep. of Martin*, ECF No. 82-3, at 4. Mr. Hardin appealed this decision on March 11, 2016, and an appeal hearing was

conducted less than two months later on May 4, 2016. *See Dep. of Bullard*, at 8; *Dep. of Barbour*, ECF No. 82-5, at 2.

At the appeal hearing Ms. Martin represented Marshall University and presented the case against Mr. Hardin, while Mr. Hardin was represented by counsel, Anthony Spenia and Elizabeth Estep. *See Dep. of Barbour*, 82-5, at 3–4. At the conclusion of the hearing, the Student Conduct Panel found that Mr. Hardin was not responsible for violating the Marshall University Student Code of Rights and Responsibilities, and issued no sanction against him. *See Dep. of Bullard*, at 9–11.

After the panel issued their finding, Ms. Martin spoke with Plaintiff about an appeal, and subsequently emailed Title IX Coordinator Debra Hart to inform her that Plaintiff intended to appeal. *See Dep. of Gonzales*, ECF No. 82-1, at 19; *Dep. of Martin*, ECF No. 86-1, at 61. However, Plaintiff never formally appealed the decision of the hearing panel. *See Dep. of Gonzales*, ECF No. 82-1, at 20–22; *Dep. of Bullard*, at 12. Plaintiff then left campus after her freshman year concluded on May 6, 2016, and started the admission process to Slippery Rock University. *See Dep. of Gonzales*, ECF No. 82-1, at 23–24.

On May 11, 2016, one week after the appeal hearing, Carla Lapelle—Defendant's Interim Dean of Student Affairs—*sua sponte* issued a recommendation to Marshall University President Jerome Gilbert that Mr. Hardin be completely banned from campus until the conclusion of his criminal case, but be permitted to take online courses. *See Dep. of Gonzales*, ECF No. 82-1, at 30; *Dep. of Bullard*, at 13–14. President Gilbert then adopted Ms. Lapelle's recommendations. *See Dep. of Bullard*, at 16. However, on May 12, 2016, Mr. Hardin appealed President Gilbert's decision to ban him from campus, and President Gilbert lifted the ban on Mr. Hardin pending his appeal. *See Review Letter*, ECF No. 82-7, at 2. The record indicates, however, that the no-contact

order was never lifted. *See id.* Mr. Hardin's appeal was then directed to Ms. Hart, and on August 18, 2016, Ms. Hart affirmed the decision to ban Mr. Hardin from campus until the resolution of his criminal case. *See id.* Thus, Defendant investigated the alleged rape, expelled Mr. Hardin from school, conducted an appeal hearing on the expulsion, banned Mr. Hardin from campus despite the fact that his expulsion was overturned, and affirmed Mr. Hardin's ban from campus after he appealed, all within seven months of being informed of the alleged rape.

Almost five months after Mr. Hardin's ban was affirmed, on January 11, 2017, Mr. Hardin entered a Kennedy Plea to the charge of battery and was sentenced to three years of probation. *See Review Letter*, at 2. On January 20, 2017, Mr. Hardin then requested a reconsideration of his ban from Marshall University due to the conclusion of his criminal case, and Ms. Gonzales objected to his request on February 1, 2017.[1] *See id.* Mr. Hardin's ban was then lifted to allow him to return to campus to attend classes, but he was not permitted to enter the residence halls, to participate in extracurricular activities, or to attend the Rec Center. *See id.* at 3. These restrictions were subsequently lifted in the Fall of 2018. *See Dep. of Hart*, ECF No. 86-3, at 14.

Plaintiff then filed a complaint against Defendant on January 1, 2018, for violating Title IX, arguing that, as a result of Defendant's actions and deliberate indifference toward the sexual assault, she suffered various damages. *See Compl.* Defendant now moves for summary judgment on Plaintiff's claim. *Def's Mot. for Summ. J.*, at 1.

**II. Standard of Review**

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence

---

[1] As a reminder, Plaintiff was no longer attending Marshall University at this time.

and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted). Therefore, summary judgment will not be granted if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 247–48.

## III. Discussion

Title IX of the Education Amendments of 1972 states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …." 20 U.S.C. § 1681(a). Thus, to establish a Title IX claim on the basis of sexual harassment, "a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

While not obvious from the language of the statute, the Supreme Court has interpreted Title IX as allowing a private damages action against a school board in cases of *student-on-student* harassment, but only when the school "acts with deliberate indifference to known acts of harassment in its programs or activities," *and* that harassment "is so severe, pervasive, and

objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).

There is no dispute in this case that Plaintiff was a student at an educational institution receiving federal funds, or that she was subjected to harassment based on her sex—the first two requirements to establish a Title IX claim based on sexual harassment. However, Defendant argues that it is entitled to summary judgment on Plaintiff's Title IX claim for two reasons: first, because "[t]he alleged harassment suffered by Plaintiff was not sufficiently severe or pervasive to create a hostile environment in an educational program or activity," and second, because "[t]here is no basis for imputing liability to the institution." *See Mem. in Supp. of Def.'s Mot. for Summ. J.*, ECF No. 83, at 10, 14. Because the Court agrees that there is no basis for imputing liability to Defendant, and this finding is dispositive of the case, the Court will address only this second issue of liability.

As stated earlier, in cases such as this where the action against a school board stems from student-on-student harassment, in order to impute liability to the school board a plaintiff must demonstrate that the school acted with "deliberate indifference" to known acts of harassment. Deliberate indifference is a high bar, and has been defined as a response by a school that is "clearly unreasonable in light of the known circumstances." *See Davis*, 526 U.S. at 648; *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 76 (4th Cir. 2016); *see also Hill v. Cundiff*, 797 F.3d 948, 972–73 (11th Cir. 2015) (holding that a female plaintiff, who was raped by a male student, asserted sufficient facts to prove deliberate indifference when her university had actual knowledge of the male student's prior sexual misconduct at other schools, yet recruited him to play basketball, admitted him as a student, and failed to supervise him on campus *despite* this knowledge, waited "almost a *year* after the rape to *conduct* a disciplinary hearing," and failed "to take *any* precautions

to prevent future attacks by, for example, removing the rapist from student housing or implementing a more protective sexual assault policy.") (emphasis added).

However, despite the high standard of deliberate indifference, it is not true, "of course, that only a *complete* failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice to shield a school from liability." *S.B. ex rel. A.L.*, 819 F.3d at 77 (emphasis added).[2] Rather, even when a school is "not *entirely* unresponsive to allegations of harassment," it is still clearly unreasonable when it does not "engage[] in efforts that were reasonably calculated to end the harassment." *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 689 (4th Cir. 2018) (emphasis added) (internal quotations omitted) (holding that a university does not engage in acts reasonably calculated to end harassment when plaintiffs were repeatedly harassed, and reported the harassments "to the University on multiple occasions over many months," but the administrators "merely responded with two listening circles, a generic email, and by sending a campus police officer with a threatened student one evening after particularly aggressive and targeted" messages).

The purpose of the high standard of deliberate indifference is to limit a school's liability to situations where there is "an official decision by the [school] not to remedy the violation." *See Davis*, 526 U.S. at 642. Additionally, because "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable … [i]n an appropriate case, there is no reason why courts, on a motion … for summary judgment, … could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 648–49.

---

[2] Defendant claims that the "Fourth Circuit" has other relevant holdings regarding the deliberate indifference standard, but many of these holdings are from district courts, not the Fourth Circuit. *See, e.g.*, Mem. in Supp. of Def.'s Mot. for Summ. J., at 10 (citing only a district court opinion for the proposition that "the *4th Circuit* has *specifically* held that 'deliberate indifference' requires a pattern of evidence demonstrating that the school knew or should have known the approach would cause harm and that they were therefore choosing to cause that harm by continuing the approach.") (emphasis added).

Based on the following undisputed facts, the Court holds that Defendant's response to Plaintiff's harassment was not clearly unreasonable as a matter of law. Defendant sent Mr. Hardin a letter charging him with sexual assault, and initiated the Title IX investigation, only one day after receiving notice of the harassment. When Defendant initiated the investigation, it also ordered Mr. Hardin not to contact Plaintiff or her acquaintances and banned him from the residence halls. After investigating the incident, Defendant expelled Mr. Hardin, and after the Student Conduct Panel overturned this expulsion Defendant provided Plaintiff with the option to appeal this result. Additionally, despite the finding of the Student Conduct Panel, Defendant banned Mr. Hardin from campus until the conclusion of his criminal trial and affirmed this decision after Mr. Hardin appealed. During this entire period Plaintiff never informed Defendant that Mr. Hardin contacted her after the no-contact order was issued,[3] and when Mr. Hardin's ban was eventually lifted, it was done only to enable him to attend necessary classes, and at a time when Plaintiff was no longer attending Marshall University. Further, even after Mr. Hardin's ban from campus was lifted, Defendant still forbid him from the residence halls, the recreation center, and participating in extracurricular activities. Crucially, during all periods when Mr. Hardin was permitted on campus the no-contact order and ban from the residence halls remained in effect. Finally, when Defendant eventually did lift all restrictions from Mr. Hardin it had been over two years since Plaintiff attended Marshall University.

Based on these numerous facts detailing Defendant's efforts to protect Plaintiff and other students from Mr. Hardin's presence and further harassment, it is unreasonable to hold that there

---

[3] While this fact is not technically undisputed because Plaintiff asserts in her memorandum that "[Defendant] failed to take any action against Mr. Hardin even when it knew he violated … no contact orders," and that "the evidence shows that the [no-contact] order was violated by Mr. Hardin," she makes no citation to the record to support these claims, and the deposition testimony of her expert states otherwise. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 15, 19; *Dep. of Bullard*, at 23–24 (answering "[n]o" when asked if Plaintiff ever "complained about [Mr. Hardin] attempting to make contact" with Plaintiff, and stating that she is not "aware" of Mr. Hardin ever contacting Plaintiff).

nonetheless may have been "an official decision by [Defendant] not to remedy" the alleged sexual assault. Rather, Defendant's *multiple* actions to *remove* Mr. Hardin from campus—the second of which was successful—clearly demonstrates that Defendant engaged in efforts "reasonably calculated to end the harassment," contrary to the defendant in *Hurley*, which only responded to repeated acts of harassment with "listening circles," an email, and a police officer for protection on a single occasion. Defendant's actions in this case were also unlike the university's actions in *Hill*, where the university did not even remove the perpetrator from student housing, let alone the entire campus.

However, despite the above acts, Plaintiff argues that she has set forth sufficient evidence to lead a reasonable jury to conclude that Defendant was deliberately indifferent to her harassment. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 16–20. Specifically, she argues that there was a procedurally flawed appeal hearing, that Defendant did not punish Mr. Hardin for alleged violations of Defendant's order, that Defendant's decisions after the appeal hearing were clearly unreasonable, and that Plaintiff has an expert who will testify that Defendant was deliberately indifferent. *See id.* The Court will address each issue in turn.

**A. Whether Procedural Flaws in the Appeal Hearing Can Establish Deliberate Indifference**

First, Plaintiff asserts that she can establish that Defendant was deliberately indifferent to her harassment based on numerous procedural flaws in the appeal hearing. For example, there is no policy that allows a lawyer to directly question the witnesses or the victim, but this occurred in Plaintiff's case. *See Dep. of Martin*, ECF No. 86-1, at 15, 19. Additionally, Plaintiff alleges that she was not permitted to return to the appeal hearing after she testified, therefore not allowing her to make an impact statement—which Defendant's policy affords her the right to do. *See Dep. of Keith Gonzales*, ECF No. 86-2, at 17; *Dep. of Martin*, ECF No. 86-1, at 51. Further, the hearing

officer was Michelle Barbour, who worked as a paralegal at the same law office as one of Mr. Hardin's lawyers over a decade prior to the hearing. *See Dep. of Barbour*, ECF No. 86-2, at 15.[4] Plaintiff also claims that the panel misunderstood the burden of proof, and that Ms. Martin was incompetent for various reasons—including for failing to correct the panel's mistakes or the erroneous assertions that Mr. Hardin's attorneys made to it. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 4–5.

It is clear from these assertions that a dispute of fact exists as to whether the appeal hearing was procedurally flawed, but that dispute is immaterial, because an imperfect hearing is insufficient to establish deliberate indifference in this case. Deliberate indifference "is a high bar, and neither negligence nor mere unreasonableness is enough." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011). Thus, while facts demonstrating various inconsistencies and flaws in the hearing process—such as Ms. Martin's alleged incompetence—is evidence of Defendant's negligence, this is not the standard to demonstrate Defendant's liability.[5]

Additionally, even if the Court accepted that the mistakes in the appeal hearing were so egregious that they could *initially* lead to a finding of deliberate indifference, this finding is eliminated for two distinct reasons. First, as explained earlier, Defendant provided Plaintiff with a path to correct any possible mistakes in the hearing through a formal appeal, but Plaintiff did not

---

[4] The Court notes that these were not the only procedural flaws that Plaintiff alleges, and others are set forth in her memorandum. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 1–5. However, some of Plaintiff's factual assertions are also misrepresentations. *See, e.g., id.* at 3 (stating that "Ms. Martin intended to bring [up the fact that Mr. Hardin was seen coming out of Twin Towers East] at the student conduct panel hearing, as it was a second violation, but she *never* did," when Ms. Martin actually testified that she couldn't *recall* if she did) (emphasis added).

[5] The Court also notes that some of the "flaws" alleged—such as Mr. Hardin's attorneys being permitted to make procedural objections which delayed the hearing date and directly question Plaintiff at the hearing—were not actually flaws at all, but acts done to provide Mr. Hardin due process. *See North v. West Virginia Board of Regents*, 233 S.E.2d 411, 417 (W. Va. 1977) (stating that when a student is expelled from a university the "student is entitled to substantial due process protection," and the standard of due process requires the student to have the "opportunity to have retained counsel at any hearings on the charges" as well as the right "to confront his accusers ….").

use this option. Plaintiff cannot logically argue that the mistakes in the appeal hearing are evidence that Defendant was deliberately indifferent to Plaintiff's harassment when Defendant then provided an avenue to *correct* the mistakes—and there is no evidence that the avenue is a "half-hearted … remedial action." Second, despite Plaintiff's failure to formally appeal, Defendant nonetheless banned Mr. Hardin from campus within one-week. In view of this swift and significant action—initiated at Defendant's own discretion—to remove Plaintiff's alleged harasser from campus and thus remedy potential mistakes made at the appeal hearing, it cannot be maintained that Defendant was also "deliberately indifferent" to the harassment that Plaintiff suffered. While Plaintiff may argue that Defendant should have expelled Mr. Hardin, rather than merely banned him from campus, "a claim that the school system could or should have done more is insufficient to establish deliberate indifference," and "courts should not second guess the disciplinary decisions that school administrators make." *See Porto v. Town of Tewksbury*, 488 F.3d 67, 73 (1st Cir. 2007); *Vance v. Spencer County Public School Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). Therefore, the facts which arguably demonstrate a flawed appeal hearing are insufficient to establish that Defendant was deliberately indifferent to Plaintiff's harassment.

**B. Whether Defendant's Failure to Punish Mr. Hardin for Order Violations Can Establish Deliberate Indifference**

Plaintiff next argues that a jury could find that Defendant was deliberately indifferent to Plaintiff's harassment because Mr. Hardin failed to abide by Defendant's orders, and did so without repercussion. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 15, 19. For example, Plaintiff communicated to Ms. Martin that Mr. Hardin told others he possessed a key to the residence halls, and Ms. Martin's graduate assistant, Mr. Neal, told Ms. Martin that he witnessed Mr. Hardin leaving a residence hall. Despite these facts, Mr. Hardin was never punished. *See id.* at 3.

The Court rejects Plaintiff's argument that merely because Ms. Martin did not *punish* Mr. Hardin for possibly violating one of Defendant's orders a jury could find that Defendant was "clearly" unreasonable. Defendant's expert witness Brett Sokolow testified—without contradicting evidence from Plaintiff—that Ms. Martin investigated the alleged residence hall violations and determined that it was unclear whether Mr. Hardin violated the ban. *See Dep. of Sokolow*, ECF No. 87-5, at 7–8. Therefore, understandably, Mr. Hardin was not punished for this alleged violation. *See id.* While this *result* may not be what Plaintiff desired, Plaintiff is not entitled to a specific result. *See Vance*, 231 F.3d at 260 ("[v]ictims do not have a right to particular remedial demands."). Rather, Plaintiff is only entitled to a response by Defendant that is not clearly unreasonable, and this good-faith investigation, which did not lead to a confident finding, suffices. *See Doe v. Taylor Independent School Dist.*, 15 F.3d 443, 456 n.12 (5th Cir. 1994) (holding that even *ineffective* responses, if done in good faith, may result in a finding that a school official was not deliberately indifferent).

Additionally, Ms. Martin testified that she intended to tell the hearing panel that Mr. Hardin was seen in a residence hall,[6] and that she did not bring a separate disciplinary action against Mr. Hardin for allegedly violating the order because she felt the evidence of the alleged rape was sufficient to have Mr. Hardin expelled. *See Dep. of Martin*, ECF No. 86-1, at 60. While this decision may have not been prudent in *hindsight*, that fact does not render the decision "clearly unreasonable." *See Porto*, 488 F.3d at 74 ("[t]he test for whether a school should be liable under Title IX for student-on-student harassment is not one of effectiveness by hindsight.").

As another example of Defendant's failure to punish Mr. Hardin, Plaintiff alleges that she felt mocked by Mr. Hardin when he wore her headband at a basketball game—a game Plaintiff did

---

[6] Ms. Martin does not remember whether she mentioned this fact at the hearing. *See Dep. of Martin*, ECF No. 87-1, at 6.

not attend. *See Dep. of Martin*, ECF No. 86-1, at 20. However, Ms. Martin investigated this incident as well, and questioned Mr. Hardin, but had no evidence that it was Plaintiff's headband. *See id.* As explained earlier, the good-faith investigation in this situation is sufficient to eliminate a finding of deliberate indifference, regardless of whether Defendant failed to punish Mr. Hardin.[7] Therefore, Plaintiff cannot establish that Defendant may have been deliberately indifferent to her harassment based on its responses to Mr. Hardin's alleged violations.

**C. Whether Defendant's Decisions After the Appeal Hearing Can Establish Deliberate Indifference**

Plaintiff also claims that Defendant may have been deliberately indifferent to her harassment based upon its actions after the appeal hearing. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 16. Plaintiff specifically takes issue with Defendant's decision to tie the outcome of the criminal case to its own disciplinary process, and its decision to eventually reinstate Mr. Hardin. *See id.*

With respect to Plaintiff's claim that Defendant may have been deliberately indifferent to her harassment because it partially tied its final decision to Mr. Hardin's criminal case,[8] the Court disagrees. While Defendant is obviously free to ignore criminal charge results and make its own decisions independent of the criminal justice system, it is hardly "clearly unreasonable" for a school to look to that system for guidance on how to determine guilt or punishment. Refusing to lift Mr. Hardin's ban until his criminal case has concluded is certainly a decision based on reason, and is "calculated to end the harassment."

---

[7] Plaintiff also alleges that she was mocked on social media by three of Mr. Hardin's friends. *See Dep. of Gonzales*, ECF No. 86-2, at 6. However, even assuming that an intentional inaction to this incident could establish deliberately indifferent to "harassment," Plaintiff does not claim that she alerted Ms. Martin or anyone associated with Defendant to this issue. *See id.*

[8] Defendant's decision was not completely tied to the outcome of the criminal case because, even after the criminal case concluded, Mr. Hardin was not permitted in the residence halls, to participate in extracurricular activities, or to attend the Rec Center.

The Court also disagrees with Plaintiff's second assertion that eventually reinstating Mr. Hardin two years after Plaintiff last attended campus may demonstrate that it was deliberately indifferent to her harassment. First, the Court struggles to understand how a university can be deliberately indifferent to an individual's harassment based on actions that took place when that individual was no longer on campus. After all, when Plaintiff left Marshall University her alleged harassment necessarily ceased. To be clear, the Court is not stating that merely because a student left a university that school cannot be liable under Title IX. *Brzonkala v. Va. Polytechnic Inst. & State Univ.*[9] demonstrates that when a student is essentially *forced* to leave *because* of the university's deliberate indifference to her harassment while she was on campus the university cannot be shielded from liability. *See id.* ("[g]iven … the total inadequacy of [the university's] redress, and [the plaintiff's] reasonable fear of unchecked retaliation including possible violence, [the plaintiff] did not have to return to the campus the next year and personally experience a continued hostile environment [in order to avoid losing her legal claim]."). However, this situation did not occur here. For the reasons discussed earlier, the Court has already found that at no point *before* Plaintiff left Marshall University was Defendant deliberately indifferent to her harassment, and therefore Plaintiff was not indirectly forced to leave like the victim in *Brzonkala*.[10] Thus, unlike in *Brzonkala*, the moment Plaintiff left Marshall University and never returned is the moment Defendant avoided Title IX liability as to this Plaintiff.

---

[9] 132 F.3d 949, 960 (4th Cir. 1997) (reversed and remanded on different grounds).

[10] While Plaintiff claims, and this Court does not doubt, that she left because of fear of uncertainty, deliberate indifference cannot be established merely because the victim of a rape is uncertain about what will happen with her alleged perpetrator. *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 15. A university which engages in efforts reasonably calculated to end *disputed* harassment will likely leave the alleged victim of the harassment *often* feeling uncertain about the future actions of the university. Such is the natural result of disputed incidents. The only way to eliminate this uncertainty would be to allow universities to expel students for allegations without any investigation or due process.

Second, even *if* a university's actions after a student left campus could still establish that it was deliberately indifferent to harassment, Defendant's actions in this case do not. When Defendant lifted Mr. Hardin's ban from campus, it did so after Mr. Hardin entered a *Kennedy* plea[11] to a misdemeanor, and his ban was only lifted to allow him to attend classes—he was still not permitted in the residence halls, to participate in extracurricular activities, or to attend the Rec Center. Further, when these restrictions were subsequently lifted in the fall of 2018, it had been approximately two and a half years since the alleged rape took place, and there is no evidence that Defendant was made aware that Plaintiff had any intention of returning to campus. While the Court may have its own opinions about the appropriate actions that Defendant should have taken against Mr. Hardin, under these circumstances Defendant's actions, as a matter of law, were not "clearly unreasonable," and thus in this situation the Court cannot "second guess the disciplinary decisions" that Defendant made. For these reasons, Defendant's decisions after the appeal hearing cannot establish deliberate indifference.

### D. Whether an Expert's Opinion Can Establish Deliberate Indifference

Finally, and perhaps most importantly, Plaintiff claims in her memorandum that she has "a Title IX expert, Courteny (sic) Bullard, who will testify that [Defendant] acted unreasonably in light of the known circumstances and was deliberately indifferent." *See Resp. in Opp. to Def.'s Mot. for Summ. J.*, at 7 n.1. While this evidence would be significant, Plaintiff provides no citation to the record to support this assertion, whether in a deposition or an expert report. *See id.* Additionally, the Court cannot find any mention of this opinion in any of the attached exhibits— perhaps because, as Defendant claims, "this opinion was never expressed in her deposition or her expert report." *See Reply Mem. in Supp. of Def.'s Mot. for Summ. J.*, ECF No. 87, at 6. Plaintiff

---

[11] "Under a *Kennedy* plea, a defendant enters a guilty plea without admitting guilt." *See State v. Hutton*, 806 S.E.2d 777, 780 n.4 (W. Va. 2017).

bears the burden of proof, and a bare assertion that an expert witness will testify to a specific opinion, without any evidence in the record to support that assertion, is insufficient at this stage of the proceedings. Thus, for the reasons explained above, the Court holds that, as matter of law, Plaintiff cannot establish that Defendant was deliberately indifferent to Plaintiff's harassment.

**IV. Conclusion**

Based upon the analysis provided above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 82).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: July 30, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE